**Opinion issued February 2, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00629-CV

_____

**ELIZABETH M. TRAMMELL, Appellant**

**V.**

**FLETCHER V. TRAMMELL, SR., Appellee**

---

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-72050**

---

## O P I N I O N

Appellant Elizabeth M. Trammell appeals from the trial court's order granting appellee Fletcher V. Trammell's amended petition to modify terms of a prior final decree of divorce relating to child support and specified parental rights. In four issues, Elizabeth contends that the trial court erred by (1) decreasing the

amount of Fletcher's child support obligation, and (2) modifying Elizabeth's exclusive rights to make decisions related to their children's education, and to consent to medical, dental, and surgical treatment involving invasive procedures, and psychiatric and psychological treatment, because there is no, or insufficient, evidence supporting the modifications. We affirm.

## Background

Elizabeth and Fletcher divorced in 2011. At the time of their divorce, their children, J.E., F.V., and A.G., were nine, six, and four years old, respectively.

Under the terms of the parties' final decree of divorce, Fletcher agreed to pay Elizabeth $6,000 per month in child support, an amount far above Family Code guidelines, $8,000 per month in spousal support, and 100% of the expenses related to the children's education, summer camps, and other extracurricular activities. The parties also agreed that Elizabeth would have the exclusive right to make decisions concerning the children's education and the independent right to consent to medical, dental, and surgical treatment involving invasive procedures as well as psychiatric and psychological treatment of the children. The trial court signed the agreed final decree of divorce on May 23, 2011.

On April 25, 2014, Fletcher filed an amended petition to modify parent-child relationship in which he sought a modification of child support, tuition expenses, and the parties' rights to make decisions related to the children's education and to

2

consent to medical, dental, and mental health treatment of the children. In his petition, Fletcher alleged circumstances had materially and substantially changed and that the requested modifications were in the best interest of the children.

At the bench trial, Fletcher, a personal injury attorney, testified that his 2011 income of approximately $802,000 had, by 2013, fallen to $255,014, comprised of his salary ($220,014) and a discretionary bonus ($35,000). Fletcher supported his testimony by introducing his 2011 tax return, and his W-2s, 1099s, and pay stubs for the relevant years, as well as evidence showing that his monthly gross compensation at the time of trial was $20,000. He testified that he did not expect to receive a bonus in 2014 because a substantial verdict he obtained in Arkansas had been reversed by the Arkansas Supreme Court, which would severely impact the rest of his docket.

Fletcher testified that virtually all of his salary over the past several years had been paid to Elizabeth in accordance with his alimony and child support obligations, and that it had become necessary for him to secure a line of credit in order to be able to continue paying his own living expenses and the $4,000 a month he paid for the children's private school tuition as well as their extracurricular activities. Fletcher testified that he had exhausted the line of credit and owed approximately $365,000 on the loan. He also stated that he had reached the maximum limit on his credit cards and that his current wife had cashed her

retirement benefits to assist with their financial obligations. Fletcher testified that he had attempted to communicate with Elizabeth regarding his financial circumstances on numerous occasions before filing his amended petition but that she had been unreceptive. He further stated that he was insolvent and that if his child support obligations could not be modified he would have to declare bankruptcy.

Fletcher testified that during the pendency of the divorce proceeding, Elizabeth had limited his access to the children. Under the terms of the divorce decree, Fletcher sees the children every other weekend and every Thursday and attends their activities on weekends that Elizabeth has them. He testified that his relationship with his children is the best that it has ever been.

At the time of the divorce, the children were in primary grades with the youngest not yet enrolled in school. Fletcher testified that as the children grew older,[1] they would be transitioning into more specialized educational programs and that he would like to be more involved in the educational decisions affecting them. He also testified that he wanted to have input in the decisions related to their medical, dental, surgical, psychological, and psychiatric care. Fletcher testified that he grew up with a sister who suffers from mental illness and that it was

---

[1] Fletcher testified that the oldest child, who was twelve years old at the time of trial, would be entering high school soon because the children's current private school enrollment ended after the eighth grade.

important to him to be able to consent to any necessary psychological or psychiatric treatment that might later arise regarding their children. Fletcher acknowledged that he had no criticism of the decisions Elizabeth had made with regard to the children's education or other needs. However, he stated that he believed that it was in the children's best interest that both parents share in making those decisions, and, if he and Elizabeth shared in the decisions as well as the resulting costs, both parents would have the incentive to consider the fiscal realities of those decisions.

Elizabeth testified that she is a licensed attorney but has never practiced law and has not worked outside of the home since their first child was born in 2002. She testified that she has periodically looked for a job but had not secured employment since the divorce. Elizabeth stated that all three children attend school during the day and that it was best for her to be around them rather than working outside of the home. She acknowledged that Fletcher had informed her on several occasions prior to filing suit that he was strained financially and would not be able to continue meeting his obligations under the decree but that she was not willing to modify his child support obligation. Elizabeth testified that while she did not want Fletcher to go into debt, he had agreed to the financial obligations, and she believed that it was in the children's best interest to "get their money."

At the conclusion of trial, the trial court stated that the evidence reflected a material and substantial change in circumstances and that modification of the agreed final divorce decree was in the best interest of the children. In its June 30, 2014 order, the trial court (1) decreased Fletcher's monthly child support obligation from $6,000 to $2,565, in accordance with statutory child support guidelines; (2) ordered that Fletcher and Elizabeth pay 60% and 40%, respectively, of the expenses related to the children's education; and (3) modified the parties' conservatorship rights to share in the decision-making related to the children's education and the consent to medical, dental and surgical care involving invasive procedures as well as psychological and psychiatric treatment. Under the order, Fletcher remained obligated to pay $8,000 per month in spousal support as well as 100% of the expenses related to the children's summer camps and extracurricular activities. The trial court signed its findings of fact and conclusions of law on October 3, 2014.

## Standard of Review

The standard of review for a trial court's ruling on child support is abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Brejon v. Johnson*, 314 S.W.3d 26, 29 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The trial court's modification of conservatorship terms is reviewed under the same standard. *See In re R.D.Y.*, 51 S.W.3d 314, 317 (Tex. App.—Houston [1st Dist.]

6

2001, pet. denied). The test is whether the trial court acted arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Brejon*, 314 S.W.3d at 29.

The reviewing court must review the evidence in the light most favorable to the trial court's actions and indulge every legal presumption in favor of the order. *Id.* Under an abuse of discretion standard, legal and factual insufficiency are not independent, reversible grounds of error; rather, they are relevant factors in assessing whether the trial court abused its discretion. *Patterson v. Brist*, 236 S.W.3d 238, 240 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd). There is no abuse of discretion if some probative and substantive evidence supports the order. *Id.*

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). When challenged, however, a trial court's findings of fact are not determinative unless they are supported by the record. *Id.* We review the sufficiency of the evidence supporting the challenged findings to determine whether the trial court abused its discretion in making such findings. *Id.*

Our review of a legal sufficiency issue requires us to consider only the evidence and inferences that tend to support the finding, disregarding all evidence

and inferences to the contrary. *Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex. App.—Houston [1st Dist.] 1993, writ denied). If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue. *Id.* In reviewing a factual sufficiency issue we must consider, weigh, and examine all of the evidence that supports and contradicts the finding. *Id.*

## Discussion

On appeal, Elizabeth contends that the trial court abused its discretion in decreasing the amount of Fletcher's child support obligation and modifying her exclusive right to make decisions regarding the children's education and to consent to medical, dental and surgical care involving invasive procedures as well as psychological and psychiatric treatment because the evidence was legally and factually insufficient to support the modifications.[2]

Fletcher contends that Elizabeth failed to challenge the trial court's findings of fact, thereby limiting our review to whether the evidence was legally sufficient to support the trial court's modifications. The general rule is that if the trial court's findings of fact are not challenged by a point of error on appeal, they are binding upon the appellate court. *See Dunaway v. Dunaway*, No. 14-06-01042-CV, 2007 WL 3342020, at *8 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet.)

---

[2] Elizabeth does not challenge the trial court's order that she pay 40% of the children's private school expenses.

8

(mem. op.); *Halbert v. Kidd Jones Oil Co.*, No. 07-04-0401-CV, 2005 WL 729039, at *3 (Tex. App.—Amarillo Mar. 30, 2005, pet. denied) (mem. op.). However, a challenge to an unidentified finding of fact may be sufficient for review if the specific findings of fact which the appellant challenges can be fairly determined from the argument, the nature of the case, or the underlying legal theories. *See Dunaway*, 2007 WL 3342020, at *8; *Halbert*, 2005 WL 729039, at *3.

In her brief, Elizabeth argues that the evidence is legally and factually insufficient to demonstrate that the requested modifications granted by the trial court were in the children's best interest and that there was a material and substantial change in circumstances. Despite the fact that she did not identify in her brief the specific findings she challenges on appeal, we conclude that Elizabeth's challenges are discernable from her argument. *See Dunaway*, 2007 WL 3342020, at *8.

### A. Child Support Modification

In her first issue, Elizabeth contests the trial court's order modifying Fletcher's monthly child support obligation from $6,000 to $2,565.

A court may modify an order that provides for the support of a child if "the circumstances of the child or a person affected by the order have materially and substantially changed since . . . the date of the order's rendition." TEX. FAM. CODE ANN. § 156.401(a)(1)(A) (West Supp. 2015). Paramount to the trial court's

determination of child support is the best interest of the child. *McLane v. McLane*, 263 S.W.3d 358, 362 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002)). "In determining whether a modification in child-support payments is appropriate, the trial court should examine the circumstances of the child and parents at the time the prior decree was rendered, in relation to the circumstances existing at the time modification of the prior order is sought." *Brejon*, 314 S.W.3d at 30 (citation omitted). The burden is on the requesting party to show the requisite change in circumstances. *Branham v. Davenport*, No. 01–11–00992–CV, 2013 WL 5604736, at *6 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (mem. op.); *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 666–67 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Fletcher is a "person affected by the order" of the trial court in these proceedings, *see* TEX. FAM. CODE ANN. § 156.401, and, as such, his circumstances are subject to review to determine if they "have materially and substantially changed." *Id.*

At trial, Fletcher presented evidence that his annual income in 2011, when the parties divorced, was approximately $802,000, that his income in 2012 was $405,531, and that his income in 2013 was $225,014. Fletcher testified that he did not expect to receive a bonus in 2014 as he had in previous years because the large pharmaceutical case he had successfully tried in Arkansas had been reversed, and he anticipated that this would severely impact his four similar pending cases.

10

Fletcher stated that virtually all of his salary over the past several years had been paid to Elizabeth in accordance with his alimony and child support obligations under the final divorce decree. Fletcher testified that, in 2013, he secured a line of credit for his own living expenses and the children's private school tuition and extracurricular activities. At the time of trial, Fletcher had exhausted the line of credit and owed approximately $365,000 on the loan, and his current wife had cashed her retirement benefits to assist with their financial obligations. Fletcher stated that he had attempted to communicate with Elizabeth regarding his financial circumstances more than a year before he filed his amended petition but that she had been unreceptive. He further stated that he was insolvent and that if his child support obligations could not be modified he would be forced to declare bankruptcy. Fletcher's evidence was uncontroverted by Elizabeth.

The trial court made the following findings of fact related to the issue of child support:

21. The net resources available to FLETCHER VINES TRAMMELL for the support of the children have materially and substantially changed since the date the Agreed Final Decree of Divorce, on May 23, 2011.

22. The annual income of FLETCHER VINES TRAMMELL in the year of the divorce in 2011 was $802,447.12.

. . . .

24. The annual income of FLETCHER VINES TRAMMELL is 2012 was $405,531.04.

11

. . . .

26. The annual income of FLETCHER VINES TRAMMELL in 2013 was $255,014.39.

. . . .

28. As of May 31, 2014, FLETCHER VINES TRAMMELL had earned $100,000.00 in income for 2014.

. . . .

32. The drastic reduction of FLETCHER VINES TRAMMELL's income since the time of the original agreement in 2011 materially and substantially affected FLETCHER VINES TRAMMELL'S ability to meet and afford his overall financial obligations, including those in the divorce decree.

33. Since May 23, 2011, FLETCHER VINES TRAMMELL has incurred substantial debt in order to try and maintain his financial obligations as ordered in the Agreed Final Decree of Divorce.

. . . .

35. No evidence was presented to suggest that FLETCHER VINES TRAMMELL's decrease in income since 2011 was attributable to any lack of effort, voluntary underemployment or other circumstances indicating that he sought to avoid child support obligations under the terms of the Agreed Final Decree of Divorce.

36. It is not in the best interest of the children for FLETCHER VINES TRAMMELL to continue to accumulate debt in order to fulfill his financial obligations for child support and other expenses for the children when the law permits a modification of child support under proper circumstances and there was no evidence to suggest that the ongoing, reasonable needs of the children could not be met by the combined financial support from both parents.

12

A trial court retains broad discretion in making the equitable decision of whether to modify a prior support order. *See In re K.P.*, No. 01-00-01115-CV, 2001 WL 1168579, at *3 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Friermood v. Friermood*, 25 S.W.3d 758, 760 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Here, the trial court was presented with uncontroverted evidence that Fletcher's income had significantly decreased since the divorce, he had exhausted the other financial resources available to him, and he was in danger of declaring bankruptcy. Moreover, under the order, Fletcher remains obligated to pay $8,000 per month in spousal support, 100% of the expenses related to the children's summer camps and extracurricular activities, and 60% of the children's educational expenses. Elizabeth produced no evidence that Fletcher had other sources of present or future income other than those about which he testified. We conclude that there is sufficient evidence from which the trial court could have reasonably concluded that Fletcher met his burden of proving a material and substantial change in circumstances. *See McGuire v. McGuire*, 4 S.W.3d 382, 387 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (concluding evidence that former husband's earnings had decreased significantly from wages he had earned in year before divorce was sufficient to show material and substantial change in former husband's circumstances warranting modification of child support). Based on the record before us, we also conclude that there was sufficient evidence from which

the trial court could have concluded that modifying Fletcher's child support to enable him to continue to meet his financial obligations under the decree without continuing to accumulate debt was in the best interest of the children. Accordingly, the trial court did not abuse its discretion in modifying Fletcher's child support. *See id.* at 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (stating there is no abuse of discretion if some probative and substantive evidence supports order). We overrule Elizabeth's first issue.

## B. Modification of Conservatorship Terms

In her second, third, and fourth issues, Elizabeth challenges the trial court's order granting the parties equal rights, subject to the agreement of the other parent, to make decisions related to the children's education and to consent to medical, dental, and surgical care involving invasive procedures as well as psychological and psychiatric treatment.

To support modification of an order regarding conservatorship, a trial court must find that the modification "would be in the best interest of the child and . . . the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order." TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West Supp. 2014). The party seeking modification has the burden to establish these elements by a preponderance of the evidence. *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex.

14

App.—Austin 2006, pet. denied); *Agraz v. Carnley*, 143 S.W.3d 547, 552 (Tex. App.—Dallas 2004, no pet.).

Fletcher testified that, during the pendency of the divorce proceeding, Elizabeth had limited his access to the children to approximately an hour or so on the weekends. Under the terms of the divorce decree, Fletcher sees the children every other weekend and every Thursday and attends their activities on weekends that Elizabeth has them. He testified that his relationship with his children is the best that it has ever been.

At the time of the divorce, the children were in primary grades with the youngest not yet enrolled in school. At the time of the modification hearing, the children were ages twelve, nine, and seven. Fletcher testified that the parties' oldest child would soon be entering high school because her current private school enrollment would end after the eighth grade. Fletcher testified that as the children grew older, they would be transitioning into more specialized educational programs and that he felt it was important for him to be involved in the educational decisions affecting them. Elizabeth testified that Fletcher had participated in the educational decisions before the divorce and offered no evidence as to why he should not remain involved going forward.

Fletcher also testified that he wanted to have input in the decisions related to their medical, dental, surgical, psychological, and psychiatric care. Having grown

15

up with a sister who suffers from mental illness, Fletcher testified that it was important to him to be able to consent to any necessary psychological or psychiatric treatment that might later arise regarding their children. He acknowledged that he had no criticism of the decisions Elizabeth had made with regard to the children's education or other needs. However, he stated that he believed that it was in the children's best interest that both parents share in making those decisions, and, if he and Elizabeth shared in the decisions as well as the resulting costs, both parents would have the incentive to consider the fiscal realities of those decisions.

The trial court made the following findings of fact related to the issue of conservatorship:

17. Pursuant to the 2011 Agreed Final Divorce Decree, ELIZABETH TRAMMELL retained the exclusive right to make all educational decisions for the children, however she bore no financial responsibility, save and except those for September 2011 and March 2012, for the resulting educational costs and/or expenses, if any, of the decisions she made.

18. Pursuant to the 2011 Agreed Final Divorce Decree, FLETCHER VINES TRAMMELL bore 100% of the educational costs and expenses of the children, save and except those for September 2011 and March 2012, however, he possessed no right to manage and/or control the amount of those costs and/or expenses.

. . . .

42. On November 21, 2013, the date FLETCHER VINES TRAMMELL filed his Petition to Modify Parent Child Relationship seeking to modify the Agreed Final Decree of Divorce, the parties' children were then 11 years (J.E.), 8 years (F.V.), and 7 years (A.G.),

16

all attending school on a full-time basis, substantially increasing the related educational expenses for which FLETCHER VINES TRAMMELL was ordered to pay under the terms of the 2011 Agreed Final Decree of Divorce, and reducing the need for a full-time caretaker of the children while school is in session.

43. FLETCHER VINES TRAMMELL's change in financial circumstances no longer permits him to maintain and/or support a lifestyle for the children commensurate with that which existed in 2011.

44. FLETCHER VINES TRAMMEL's rights as a conservator under the Agreed Final Decree of Divorce do not authorize him to make more affordable or economical lifestyle choices for the children while in the possession and/or control of the Respondent and do not permit him to effectuate a reduction in the cost of commitments made on behalf of the children.

. . . .

53. FLETCHER VINES TRAMMELL communicated with ELIZABETH TRAMMELL about his financial situation and his inability to continue to pay the financial obligations ordered in the Agreed Final Decree of Divorce prior to filing the modification with the trial court.

54. FLETCHER VINES TRAMMELL communicated with ELIZABETH TRAMMELL about the children's education prior to filing the modification action with the trial court.

55. FLETCHER VINES TRAMMMELL communicated with ELIZABETH TRAMMELL about the children's expenses prior to filing the modification action with the trial court.

56. ELIZABETH TRAMMELL was unwilling to accommodate any modification of the parties' financial obligations and/or rights as contained in the parties' 2011 Agreed Final Decree of Divorce notwithstanding the material and substantial change in FLECTHER VINES TRAMMELL's financial circumstances, making it necessary for FLETCHER VINES TRAMMELL to file this modification action with the trial court.

57. The modification ordering each party to have the right, subject to the agreement of the other parent conservator, to consent to medical, dental, and surgical treatment involving invasive procedures is in the best interest of the children.

58. The modification ordering each party to have the right, subject to the agreement of the other parent conservator, to consent to psychiatric and psychological treatment of the children is in the best interest of the children.

59. The modification ordering each party to have the right, subject to the agreement of the other parent conservator, to make decisions concerning the children's education is in the best interest of the children.

60. There was sufficient evidence presented to the Court in testimony and documents to support a modification of the conservator's decision making rights.

61. At the time of the divorce, ELIZABETH TRAMMEL had limited and/or discouraged FLETCHER VINES TRAMMELL's decision making rights for and/or possession and access to the children.

62. Since the entry of the Agreed Final Decree of Divorce, awarding FLETCHER VINES TRAMMELL rights and periods of access with the children, FLETCHER VINES TRAMMELL has had the opportunity to become more involved with the children and to demonstrate the ability and willingness to play a significant role in the lives of the children.

63. Orders which obligate the parents to make shared decisions regarding the children's education and share in the financial costs incurred as a result of those decisions is in the best interest of the children.

64. Orders which obligate the parents to make shared decisions regarding the children's medical, dental, surgical, psychological, psychiatric care are in the best interest of the children.

We conclude that there is sufficient evidence from which the trial court could have reasonably determined that Fletcher had met his burden of proving that

18

there had been a material and substantial change in circumstances since the date the original decree was entered. The uncontroverted evidence showed that, at the time the final decree of divorce was entered, the children were in primary grades with the youngest not yet enrolled in school. At the time Fletcher filed the modification suit, all three children were attending school on a full-time basis, thereby substantially increasing the private school tuition and related educational expenses for which Fletcher was ordered to pay under the 2011 decree. The uncontroverted evidence showed that Fletcher's income had substantially decreased since the divorce and that he was insolvent and in danger of declaring bankruptcy. There is also sufficient evidence to support the trial court's finding that modification of the parties' conservatorship rights would be in the best interest of the children. The trial court was presented with evidence that, during the pendency of the divorce proceedings, Elizabeth had restricted Fletcher's access to the children but that, since entry of the decree, Fletcher had become more involved in his children's lives and demonstrated a desire and ability to play a more significant role in the decisions affecting his children's lives. The trial court did not abuse its discretion in modifying Elizabeth's exclusive right to make educational decisions concerning the children and to consent to their medical, dental, surgical, psychological, and psychiatric treatment to require both parents to share in making these decisions. *See McGuire*, 4 S.W.3d at 384 (stating there is no

19

abuse of discretion if some probative and substantive evidence supports order). Further, we note that the trial court's modification of the parties' conservatorship rights promotes this state's expressed public policy of encouraging parents to share in the rights and duties of raising their children after they have separated and dissolved their marriage. *See* TEX. FAM. CODE ANN. § 153.001(a)(3). Accordingly, we overrule Elizabeth's second, third, and fourth issues.

## Conclusion

We affirm the trial court's order.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Bland, and Lloyd.